## THE GIULIO.[1]

### (District Court, E. D. New York.   December 15, 1885.)

BOTTOMRY BOND—HYPOTHECATION OF VESSEL—NOTICE TO OWNER—APPROVAL.
Where the master of a bark at Tarragona executed a bottomry bond, binding the vessel and freight for advances and necessary disbursements, but it appeared that, when the bond was made, the owner was within reach of the master by telegraph from Tarragona; that a letter would have been received by him in five days; and that he was in actual communication with the master while the vessel was at Tarragona, but the latter never notified him of his intention to borrow money on the credit of the ship, or obtained his approval: *held*, that the contract, so far as it affected the vessel and freight, was void.

In Admiralty.
*Wilcox, Adams & Macklin*, for libelants.
*Goodrich, Deady & Platt*, for claimant.

BENEDICT, J.   The action against the Italian bark Giulio, and her freight money, is founded upon a written instrument, in the words and figures following:

"I, the undersigned, master of the Italian bark Giulio, now at Tarragona, loaded with oil and almonds, and ready to sail for New York, have received from Messrs. McAndrews & Co., of this city, the sum of $836.72, claimed for advances and necessary disbursements on said vessel to enable her to proceed on her voyage; which sum I promise to pay to the said Messrs. McAndrews & Co., or to their assigns, or to their order, ten days after the arrival of said vessel at said port of New York, or any other port at which the present voyage may end; and for the payment of said sum I hereby bind my vessel and owners, and I assign and transfer so much of the freight money as may be necessary, and authorize said Messrs. McAndrews & Co., their assigns and transferees, to receive and collect such freight money at any port of discharge.                                           P. MARTINGARO.
"*Tarragona, second August*, 1885."

The person by whom this instrument purports to be signed was the master of the bark, who possessed an imperfect knowledge of the English language, in which the instrument is written.   One of the defenses set up is that the master never executed the instrument, and that his name attached thereto is a forgery.   Upon this point I incline to the opinion that the signature attached to the document is genuine, but I am far from believing that the contents of the document were correctly stated to the master, or known to him when he signed it.

---

[1] Reported by R. D. & Wyllys Benedict, Esqs., of the New York bar.

I do not, however, rest my decision upon this point; for, whatever may be the truth in regard to the signing of the document, I am of the opinion that it must be held invalid, for the reason that the execution of such a contract was not within the scope of the master's authority, under the circumstances disclosed by the testimony. The contract is, in legal effect, a contract of bottomry. It is executed by the master of a ship, and it purported to bind the vessel and her freight for money borrowed, the repayment of which is made dependent upon the performance of the voyage. Inasmuch, therefore, as the evidence shows that the owner of the vessel was at Castel-a-Mare, in Italy, within reach of the master by telegraph, and that a letter from Tarragona would reach him in five days, and he was in actual communication with the master while the vessel was at Tarragona, it was necessary for the validity of the contract that the owner be notified of the master's intention to borrow money on the security of the ship, and his approval first obtained. There is no evidence of such approval or notification, and for this reason the contract, so far as it affects the ship or her freight, must be declared void, without considering the other points of objection to the validity of the instrument.